IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIRGILIO MANGUAL-ALICEA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-6277 |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | : | |
| | : | |
| Defendant. | : | |

**ORDER**

**AND NOW**, this 30th day of June, 2022, Chief Judge Juan R. Sanchez having reassigned this matter from the calendar of the Honorable C. Darnell Jones, II, to the undersigned's calendar on June 21, 2022 (Doc. No. 20); and after considering the complaint filed by the plaintiff, Virgilio Mangual-Alicea (Doc. No. 1), administrative record (Doc. No. 12), the plaintiff's brief and statement of issues in support of request for review (Doc. No. 13), the defendant's response to the request for review (Doc. No. 14), the plaintiff's reply brief in support of the request for review (Doc. No. 15), the report and recommendation filed by the Honorable Elizabeth T. Hey (Doc. No. 17), the plaintiff's objections to the report and recommendation (Doc. No. 18), and the defendant's response to the objections (Doc. No. 19), it is hereby **ORDERED** as follows:

1. The plaintiff's objections to the report and recommendation (Doc. No. 18) are **OVERRULED**;[2]

2. The report and recommendation (Doc. No. 17) is **APPROVED** and **ADOPTED**;

3. The plaintiff's request for review is **DENIED**;

4. The final decision of the Commissioner is **AFFIRMED**; and

     5.      The clerk of court is **DIRECTED** to mark this matter as **CLOSED**.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. [Instead, t]he officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). "The court may order substitution at any time." *Id.*

    Here, Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Accordingly, the court substitutes Acting Commissioner Kijakazi as the defendant in this matter.

[2] This court's review of the contested portion of the report and recommendation ("R&R") is plenary. The court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). "Review of a final decision of the Commissioner of Social Security, however, is limited to determining whether the decision is supported by substantial evidence." *Abney v. Colvin*, Civ. A. No. 13-6818, 2015 WL 5113315, at *3 (E.D. Pa. Aug. 31, 2015) (citations omitted). "Substantial evidence is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). In determining whether substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own conclusion for that of the Administrative Law Judge ("ALJ"). *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

    In his objections to the R&R, the plaintiff generally contends that Judge Hey should have determined that the ALJ erred in assessing the plaintiff's mental residual functional capacity ("RFC"). *See* Pl.'s Objs. to Mag. Judge's R. & R. ("Objs.") at 1–3, Doc. No. 18. It appears that there are two components of this general objection.

    The first component is the plaintiff's argument that Judge Hey improperly relied on the portion of the record showing that when the plaintiff received psychiatric treatment, his mental status exams ("MSE") were normal. *See id.* at 1–2. The plaintiff points out that individuals like him who suffer from mental impairments have good and bad days; as such, (1) looking at the good days alone is insufficient when assessing his RFC, and (2) if the plaintiff had as many good days as bad days, he would be unable to sustain work. *See id.* at 1–2 (citations omitted).

    The defendant has responded to this component of the objection by asserting that Judge Hey properly deferred to the ALJ's assessment of the plaintiff's mental RFC. *See* Def.'s Resp. to Pl.'s Objs. to the R. & R. of the Mag. Judge at 1, Doc. No. 19. The defendant indicates that Judge Hey appropriately determined that substantial evidence supported the ALJ's determination that the plaintiff's symptoms improved when he was obtaining treatment and taking his medication and, as such, he could perform a limited range of unskilled work. *See id.* at 1–2 (citations omitted).

    After thoroughly reviewing the parties' submissions, the R&R, and the administrative record, the court does not find that Judge Hey erred in deferring to the ALJ's assessment of the plaintiff's mental RFC because substantial evidence supported the ALJ's determination. In this regard, the court recognizes that

> [a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days . . . . Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (citations omitted). Also, for someone like the plaintiff, who suffers from bipolar disorder, this is "likely to be the situation . . . [if the plaintiff] ***responds erratically to treatment***." *Id.* (citation omitted).

Here, the ALJ concluded that the plaintiff had a moderate limitation in interacting with others at the third step of the sequential evaluation. *See* Admin. R. at 21, Doc. No. 12-2. As Judge Hey accurately points out, that ALJ reached this determination because the evidence in the record showed that the plaintiff presented with overall stable and normal MSEs when he received monthly psychiatric outpatient treatment and taking his prescribed medications. *See* R. & R. at 13–14; *see also* Admin. R. at 21, 24. The plaintiff also acknowledged that, without his medications, he "experiences thought-related symptoms (bad thoughts)." Admin. R. at 24 (citations omitted); *see also id.* at 42 ("I'm supposed to take pills, but I can't right now, because I don't have a doctor. So when I don't take the pills I go back to thinking bad things.").

The court also recognizes, as the plaintiff points out, that "for individuals suffering from mental impairments, 'the work environment is completely different from home or a mental health clinic.'" Objs. at 2 (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)). Yet, the plaintiff does not point to any evidence in the record, whether by medical opinion or otherwise, that the plaintiff would not have had those same improvements while in the workplace. At bottom, and as Judge Hey explains, "[w]hen Plaintiff was seeing Dr. El-Borno regularly between January and April 2019, and prescribed medication for the treatment of his mental health impairments, his MSEs were normal apart from euthymic and depressed mood and fair judgment/insight." R. & R. at 15 (citations omitted). Thus, substantial evidence supported the ALJ's determination that when the plaintiff received treatment and took his medication (over a multiple-month period), his symptoms improved, and he could perform a limited range of unskilled work.

Regarding the second component, the plaintiff seemingly argues that Judge Hey "failed to explain how it was determined that [he] could not tolerate any contact with the public but could tolerate occasional contact with coworkers and supervisors." Objs. at 3. In this regard, he asserts that the ALJ found persuasive the portion of the consultive mental status evaluation by Kathleen Lederman, Psy.D in which she opined that he had a marked to extreme limitation in his ability to interact appropriately with the public, supervisors, and co-workers. *See id.* (citing Admin. R. at 24).

The court concludes that the record does not support this component of the plaintiff's objections. In the first instance, contrary to the plaintiff's assertion, the ALJ did not find "the opinion of [Dr. Ledermann] who opined that [the plaintiff] had marked to extreme limitation in his ability to interact appropriately with the public, supervisors, and co-workers to be persuasive." Objs. at 3 (citing Admin. R. at 24). Instead, the ALJ only found part of Dr. Lederman's consultive assessment to be persuasive; namely, the portion where she opined that the plaintiff "has no more than a mild limitation in his ability to remember, understand, and carry out simple instructions." Admin. R. at 24.

Regardless, Judge Hey accurately explained that

> the ALJ considered Plaintiff's difficulties in interacting with others and explained that when Plaintiff is under psychiatric care, he is not as limited. The ALJ also acknowledged Dr. Ledermann's assessment of Plaintiff's functional abilities, including her finding that he had a marked to extreme limitation in his ability to interact appropriately with the public, supervisors, and coworkers.

R. & R. at 14 (internal citations omitted). Judge Hey then pointed out that the ALJ then noted that the plaintiff "was not taking any prescribed medications at the time of Dr. Ledermann's consultative examination and Plaintiff testified that without his medications he experiences 'thought-related symptoms (bad thoughts).'" *Id.* (citation omitted). Judge Hey then concluded that the ALJ's determination was supported by substantial evidence. *Id.* (citation omitted).

This court agrees with Judge Hey that the ALJ's determination and reasoning was supported by substantial evidence. As already noted, the evidence in the record showed that when the plaintiff was obtaining mental health treatment and taking his prescribed medication, his mental health symptoms improved significantly. The ALJ also properly noted that the plaintiff was not seeing a psychiatrist or taking medication when he had his examination with Dr. Lederman. Also, although the plaintiff testified that he had auditory and visual hallucinations and paranoid thinking, *see* Admin. R. at 38, 41, 43, and Dr. Lederman noted as such in her consultative evaluation, *see id.* at 277, 278, this related to when he was not obtaining treatment or taking medication. Moreover, the plaintiff acknowledged during the hearing that "when I don't take the pills, I go back to thinking bad things." *Id.* at 42.

Similarly, substantial evidence supported the ALJ's determination about the plaintiff having no contact with the public and occasional contact with supervisors or coworkers but no tandem tasks. Again, when the plaintiff was taking his medication, he showed "unremarkable behavior, normal affect, intact thought processes, unremarkable thought content, intact recent and remote memory, fair insight and judgment, and no suicidal or homicidal ideation or plan." *Id.* at 23. Thus, the ALJ explained the reasons for his determination that the plaintiff had a RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to work involving only simple, routine, repetitive tasks with few, if any, workplace changes, no interaction with the public, occasional interaction with coworkers but no tandem tasks, and occasional supervision." *Id.* at 22; *see also* R. & R. at 14.